**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARICE BROOKS,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **NO. 19-2855** |
| **ANDREW SAUL,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                          December 23, 2019

Clarice Brooks, ("Plaintiff"), filed this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's decision denying her claim for Disability Insurance Benefits under Title II of the Social Security Act. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's request for review is DENIED.

### I.     PROCEDURAL HISTORY

On June 13, 2016, Plaintiff filed an application for a period of Disability Insurance Benefits under the Act. (R. 142-48). Plaintiff alleged disability since September 22, 2015, due to knee impairments and anxiety. (R. 66-68). The Social Security Administration initially denied her application on October 17, 2016. (R. 66-81, 84-88). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 27, 2018. (R. 36-65, 89-

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. Pursuant to Fed. R. Civ. P. 25(d), I have substituted Andrew M. Saul as defendant in this suit.

90). Plaintiff, represented by an attorney, appeared and testified at the hearing. (R. 39-56). An impartial vocational expert ("VE") also testified at the hearing, via telephone. (R. 56-64). On June 29, 2018, the ALJ issued a decision finding Plaintiff was not disabled and denying benefits under the Act. (R. 10-20). Plaintiff requested review of the ALJ's decision, which the Appeals Council subsequently denied on May 29, 2019, making the ALJ's decision the final decision of the Commissioner. (R. 1-5, 140-41).

On June 28, 2019, Plaintiff filed the instant Complaint seeking judicial review of the Commissioner's decision. (Compl., ECF No. 2). On August 12, 2019, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). (Consent Order, ECF No. 9). Plaintiff filed her Brief in Support of Request for Review on October 21, 2019, and the Commissioner filed his Response on November 20, 2019. (Pl.'s Br., ECF No. 12; Def.'s Resp., ECF No. 13). Plaintiff also filed a Reply in further support. (Pl.'s Reply, ECF No. 14). This matter is now ripe for adjudication.

## II. FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety, and summarizes here the evidence relevant to Plaintiff's request for review.[2]

Plaintiff was born on October 19, 1965, and was forty-nine years old on the alleged disability date. (R. 19, 66, 142). Plaintiff does not drive, and is driven places by her husband,

---

[2] The medical evidence included evidence of both physical and mental impairments. Plaintiff does not challenge the ALJ's conclusions regarding her mental impairments. Accordingly, my recitation of the medical evidence will focus on the relevant evidence; specifically, that related to her left knee.

son, or son-in-law. (R. 42). Plaintiff had past relevant work as a school crossing guard. (R. 18, 57).

### A.     Medical Evidence

On September 22, 2015, Plaintiff tripped on cracked pavement and fell, sustaining injuries to her right ankle and left knee. (R. 39-41; 331-40). She was crossing the street while working, inverted her right ankle in a pothole, and fell on her left knee. (*Id.*). She treated at the Albert Einstein Medical Center emergency room for the injuries. (R. 327-62). Diagnostic imaging revealed mild soft tissue swelling, but otherwise normal alignment with no fractures. (R. 347-49). She was diagnosed with left knee injury, and instructed to apply ice, rest, take ibuprofen, and follow up with her primary care physician. (R. 338, 351).

In October 2015, Plaintiff began treating with Dr. Francis Burke, M.D. (R. 438-82). Dr. Burke diagnosed Plaintiff with left knee contusion and right ankle sprain. (R. 460-62). Dr. Burke treated Plaintiff with medication and referred her to physical therapy. (*Id.*). The physical therapy treatment notes indicate Plaintiff responded well to treatment, reported improved symptoms, and made good functional gains with improved range of motion and strength. (R. 363, 369, 370, 371, 375, 376, 378, 379, 380, 382, 383, 384, 387, 388, 390, 391, 393, 395, 399, 400, 401, 402, 403, 404, 409, 411, 412, 413, 414, 415, 416, 420, 422, 425, 427, 429, 431). Plaintiff's gait improved, and she used no assistive devices for ambulation. (R. 363, 369, 408, 427).

Dr. Burke also referred Plaintiff for an MRI, which was completed on October 28, 2015. (R. 466, 503-04, 622-24). The radiologist opined that the MRI showed tears in the anterior and posterior horns of both her lateral and medial menisci. (R. 503-04, 622-24). Plaintiff began treating with orthopedic surgeon Dr. James Tom, M.D., on November 11, 2015. (R. 499-501;

3

*see also* R. 483-511). Dr. Tom reviewed the radiologist's report and diagnosed Plaintiff with complex tears of the lateral and medial menisci in her left knee. (R. 500). Plaintiff initially elected to continue with nonoperative physical therapy which improved her symptoms; however, she reported the pain was still present and ultimately decided to proceed with surgical arthroscopy of her left knee. (R. 495-99, 501).

On February 8, 2016, Dr. Tom performed a left knee arthroscopy with limited debridement/chondroplasty. (R. 488-94). Surgery revealed that her lateral and medial menisci were intact, with "no evidence of tear despite suggestion by preoperative MRI." (*Id.*). Post-operatively, Dr. Tom diagnosed Plaintiff with "[l]eft knee chondromalacia/degenerative changes." (*Id.*). At follow-up appointments, Plaintiff presented with pain in her right knee exacerbated by physical therapy for her left knee, and some pain and discomfort in her left knee. (R. 483-86). On June 8, 2016, Dr. Tom noted Plaintiff presented with full range of motion, recommended she undergo physical therapy, and opined that she could return to light work duty two times a week until the end of the school year. (R. 484).

On August 26, 2016, Plaintiff presented to consultative examiner Dr. Kathleen Mullin, M.D. (R. 592-605). Plaintiff reported a chief complaint of left knee pain resulting from her September 2015 fall. (R. 592). She indicated that she attends physical therapy three times a week, and uses a topical gel, which she reported helps. (*Id.*). On physical examination, Dr. Mullin noted that Plaintiff presented with a cane, and that her gait was normal both with and without the cane. (R. 594). Dr. Mullin indicated that Plaintiff had difficulty walking on her toes, but was able to walk on her heels and did not need assistance getting on or off the exam table or rising from a chair. (*Id.*). Dr. Mullin reported that Plaintiff presented with full range of motion in both knees, with no tenderness and negative Lachman sign. (*Id.*). She also noted that Plaintiff

had normal neurologic findings, including no sensory deficit and 5/5 strength in her lower extremities with no muscular atrophy. (R. 594-95). Dr. Mullin diagnosed Plaintiff with "[l]eft knee pain, status post meniscal repair in 02/16 [and] [i]ntermittent right knee pain." (R. 595). Dr. Mullin assessed Plaintiff's prognosis as "[g]ood." (*Id.*).

Dr. Mullin also completed a Medical Source Statement of Plaintiff's Ability to do Work-Related Activities (Physical). (R. 596-601). She opined that Plaintiff could frequently lift and carry up to ten pounds, occasionally lift and carry eleven to twenty pounds, and never lift and carry over twenty-one pounds. (R. 596). Dr. Mullin assessed that Plaintiff could sit, stand, and walk for eight hours total in an eight-hour workday and, at one time without interruption, sit for two hours, stand for one hour, and walk for thirty minutes. (R. 597). She also indicated that Plaintiff did not require the use of a cane to ambulate. (*Id.*).

Plaintiff treated with chiropractor Marc Cohen, D.C., of Oxford Rehabilitation Center. (R. 537-76, 724-70). At her initial evaluation with Dr. Cohen, "knee – special tests" revealed negative findings in her left knee, with 5/5 myotomes in all categories. (R. 559, 557-60). Dr. Cohen diagnosed Plaintiff with left knee sprain/strain, and recommended Plaintiff undergo physical therapy. (R. 559-60). Plaintiff continued physical therapy with Dr. Cohen, who indicated that she tolerated exercises well, and that she reported decreases in pain and symptoms following therapy. (R. 537, 538, 540, 542, 543, 545, 546, 551, 552, 553, 554, 555, 556). The treatment notes show that Plaintiff occasionally presented with a single point cane, and would alternate which side depending on which knee was causing pain. (R. 552-53, 727, 730, 733, 737).

Dr. Cohen also completed a Medical Source Statement. (R. 577-78). He assessed that in a normal workday, Plaintiff could sit for zero to two hours, and stand and walk for one hour. (R.

5

577). He indicated that Plaintiff could never lift and carry any weight, and could never use upper or lower extremities for pushing and pulling activity. (*Id.*). Dr. Cohen opined that Plaintiff would require accommodations for unscheduled walking breaks, approximately every ten to thirty minutes. (R. 578).

Dr. Cohen referred Plaintiff for consultation with orthopedic surgeon Dr. Zohar Stark, M.D. (R. 646-55). Dr. Stark reported that Plaintiff presented with a limp to avoid using her left lower extremity, and used a cane to assist with ambulation. (R. 647). Physical examination revealed generally normal results. (*Id.*). Dr. Stark diagnosed Plaintiff with "[s]prain/contusion left knee[,] status post arthroscopic surgery left knee[, and] incomplete rehabilitation of left knee." (*Id.*). He assessed that "[Plaintiff] remains stable" and recommended she continue physical therapy and use NSAIDs. (*Id.*). Treatment notes from follow-up appointments with Dr. Stark indicate the same findings and recommendations. (R. 649, 651, 653, 655).

Plaintiff also treated with physiatrist Dr. Amelia Tabuena, M.D. (R. 754-60). Plaintiff presented with a cane and reported left knee pain, with compensatory right knee pain. (*Id.*). Physical examination revealed stable gait with the cane, minimal swelling and tenderness, mild tightness of the left posterior hamstring, and 4/5 left knee flexion and extension. (R. 756, 758, 760, 762). Dr. Tabuena referred Plaintiff for an MRI, which revealed "[m]ild degenerative joint disease medially[,] ACL sprain[, and] intact menisci." (R. 711). Dr. Tabuena recommended Plaintiff continue physical therapy and chiropractic care with Cohen, and also treated Plaintiff with steroid injections and anti-inflammatory medications. (*Id.*).

Plaintiff last treated at Relievus Advanced Spine and Pain with anesthesiologist and pain management specialist Dr. Shawn Puri, M.D. (R. 675-710). Physical examination revealed generally normal findings in her left knee, with tender ACL and mildly decreased extension, but

no swelling, normal flexion, and negative draw tests. (R. 707). Dr. Puri diagnosed, *inter alia*, left knee pain. (R. 708). He recommended Plaintiff continue the conservative treatment with physical therapy and NSAIDs. (*Id.*). Treatment notes from follow-up appointments with Dr. Puri indicate the same findings and recommendations of treatment. (R. 676-705).

On June 8, 2017, Plaintiff presented to Dr. Stuart L. Gordon, M.D., an Independent Medical Examiner. (R. 771-75). Plaintiff described her treatment history and stated she has "severe pain, 10/10 in both knees." (R. 771-72). On physical examination, Dr. Gordon indicated that Plaintiff had no evidence of any joint swelling or laxity, there was no quad atrophy, and that "[s]he had multiple findings of guarding during the examination with any kind of muscle testing." (R. 772-73). Dr. Gordon reviewed the medical records, and opined that the MRIs and records reveal "both knees to be completely normal for any internal derangement. There is no evidence of any meniscal tear of the left knee. This is corroborated by Dr. Tom's operative report." (R. 773). Dr. Gordon assessed that she was fully weightbearing on examination. (*Id.*). He opined that "[a]t the very most [Plaintiff] had a contusion injury with a strain to her hip and right ankle. In my opinion these are fully resolved including the hip, ankle, and left knee." (*Id.*). He concluded that "[a]n Affidavit of Full Recovery will be filed." (*Id.*).

### B. Lay Evidence

At the April 27, 2018 administrative hearing, Plaintiff testified that she did not believe she could work because of her knee impairments which prevent her from sitting or standing long. (R. 46). She stated the symptoms became worse after her left knee surgery, and that she was presently in pain management treatment, using a topical cream and medicine for pain, but no longer in physical therapy. (R. 47-48, 53-54). She testified she uses a cane primarily for balance, and it was given to her at the Einstein Emergency Center when she first had the

7

accident. (*Id.*). She stated that with the cane, she can stand for about fifteen to twenty minutes, walk about a block, and never really lifts anything because then she is unbalanced. (R. 48-49). She testified she lives in a three-story home with her husband and two sons who assist her with chores and carrying objects such as groceries and laundry. (R. 42-43, 51-53). She also provided that her three-year-old grandson lives with them as well, and that she primarily cares for him. (R. 43-45).

## III.  LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work. If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of establishing steps one through four, and then the burden shifts to the

Commissioner at step five to establish that the claimant is capable of performing other jobs in the national economy, in light of her age, education, work experience and residual functional capacity.[3] *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## IV.   ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff was not disabled. (R. 10-20). The ALJ made the following findings:

1. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 22, 2015, the alleged onset date. (R. 12).

2. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: left knee disorder, which includes mild degenerative joint disease and the residuals of a surgical repair of a left knee medial meniscus tear; depressive disorder; and anxiety disorder. (*Id.*).

---

[3] Residual functional capacity ("RFC") is defined as "that which an individual is still able to do despite the limitations caused by [her impairments]." 20 C.F.R. § 404.1545(a); *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

9

3. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P., App'x 1. (R. 13-14).

4. At step four, the ALJ found that Plaintiff has the Residual Functional Capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except she must have a sit/stand option which allows her to change positions at the workstation without being off-task more than 2 to 3 minutes an hour; can never climb ladders, ropes, or scaffold; can climb ramps and stairs frequently; balance, stoop, kneel, and crouch frequently; can never crawl; must avoid concentrated exposure to extreme cold, wetness, and humidity; and can perform simple, routine tasks. (R. 14-18).

5. The ALJ concluded Plaintiff could not perform past relevant work. (R. 18).

6. At step five, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. Representative occupations include recreation aide, counter and rental clerk, and investigator, dealer accounts. (R. 19).

Accordingly, the ALJ determined that Plaintiff was not disabled. (R. 20).

## V. DISCUSSION

In her request for review, Plaintiff raises one claim, that "[t]he ALJ failed to provide a proper RFC to the vocational expert." (Pl.'s Br., ECF No. 12, at 4). Within this generalized assertion of error, Plaintiff raises two discrete sub-claims. Specifically, Plaintiff contends: (1) "the ALJ failed to adequately discuss the impact of [Plaintiff's] use of a cane had on her ability to work," and (2) "[t]he ALJ also failed to perform a function-by-function assessment of [Plaintiff's] exertional abilities which he was required to do." (*Id.* at 4-5 (citing SSR 96-9p, 96-8p)).

The Commissioner responds that the substantial evidence supports the RFC because hand-held assistive devices are considered only when "medically required," and here, there is no medical documentation that Plaintiff required a cane. (Resp., ECF No. 13, at 4-5 (citing SSR 96-

10

9p)). The Commissioner further argues the ALJ afforded great weight to Dr. Mullins' opinion, who opined that Plaintiff did not require a cane. (*Id.*). The Commissioner also responds that the ALJ properly explained the RFC under SSR 96-8p because he provided a narrative discussion of evidence, citing medical facts supporting the RFC determination. (*Id.* at 6-8).

I will first discuss Plaintiff's use of a cane, then Plaintiff's asserted error for failing to provide a function-by-function assessment. For the following reasons, Plaintiff's request for review is denied.

### A. Plaintiff's Use of a Cane

Social Security Ruling 96-9p provides guidance on determining a claimant's residual functional capacity. SSR 96-9p, 61 F.R. 33478-01, 1996 WL 362208. The Ruling provides that certain factors may erode the occupational base, including usage of a medically required hand-held device. Specifically, the Ruling states:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

*Id.* at 34482.

In *Howze v. Barnhart*, 53 F. App'x 218 (3d Cir. 2002), the Third Circuit concluded that even where medical evidence mentioned the claimant's use of a cane—including a prescription for a cane and a medical source statement opining it was required for ambulation—this evidence "was insufficient to support a finding that his cane was medically necessary." *Id.* at 222. The

11

Third Circuit concluded the references that the claimant "uses a cane but [with] no discussion of its medical necessity" did not constitute "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" *Id.* (quoting SSR 96-9p).

I conclude the ALJ did not err. Plaintiff argues that "[t]reatment notes support Ms. Brooks' need for a cane," citing various treatment notes. (Pl.'s Br., ECF No. 12, at 5 (citing R. 552, 553, 558, 575, 592, 607, 657, 651, 655, 736, 754)).[4] However, the relied-upon treatment notes merely reflect that Plaintiff presented with a cane, and do not establish that the cane was medically required. *E.g.*, *Klein v. Berryhill*, No. 17-9720, 2019 WL 979626, at *17 (D.N.J. Feb. 28, 2019) ("[T]he record only indicates that Plaintiff was observed using a cane by a medical practitioner, and such circumstances are insufficient to establish a medical necessity pursuant to the regulations." (citing *Zuna v. Colvin*, No. 15-1825, 2017 WL 1215458, at *15 (M.D. Pa. Mar. 3, 2017) ("[A]n observation that Plaintiff was using a cane is not equivalent to an opinion that she medically required a cane."))). In *Howze*, a treating physician gave claimant a "script" for a cane and completed a check-the-box form that a cane was medically required. The Third Circuit nevertheless concluded that a cane was not "medically necessary" within the meaning of the regulations because the record contained no medical documentation that the device was needed for walking or standing, nor was there evidence describing the circumstances for which it was needed. *Howze*, 53 F. App'x at 222. Here, there is no evidence of a cane prescription and no

---

[4] Plaintiff also states "[i]n this case, the ALJ noted [Plaintiff's] testimony that she used a cane for balance that was first prescribed by a doctor at Einstein." (Pl.'s Br., ECF No. 12, at 4) (citing R. 14; *see also* R. 47-48 (Plaintiff's testimony that physicians at Einstein prescribed her a cane)). The treatment records from Einstein do not indicate that Plaintiff was prescribed a cane. (R. 337-53). The discharge summary and clinical summary, under "Prescriptions Given," lists only "ibuprofen 600 mg oral tablet." (R. 338, 347, 352).

12

"medical documentation establishing the need for a hand-held device . . . and describing the circumstances for which it is needed."[5] SSR 96-9p, 61 F.R. at 34482. Moreover, the ALJ afforded great weight to the opinion of Dr. Mullin, who opined that Plaintiff did not require the use of a cane. (R. 17, 597). The medical evidence showing Plaintiff used a cane on occasion does not establish the cane was medically required under SSR 96-9p; therefore, the ALJ did not err. *See, e.g.*, *Howze*, 53 F. App'x at 222; *Rivera v. Astrue*, No. 08-1971, 2009 WL 235353, at *5 (E.D. Pa. Jan. 29, 2009) (concluding ALJ did not err because the medical evidence included one treatment note "prescribing a cane to assist Plaintiff in walking [but] [n]o other physician mentioned the cane or the need for an assistive device."); *Stark v. Colvin*, No. 16-6062, 2017 WL 4053755, at *4 (E.D. Pa. Sept. 12, 2017) (explaining that "[m]ere mention of a claimant's cane use is not enough" and concluding ALJ did not err because "[t]here is no prescription for a cane or any indication why a cane is needed to aid [claimant's] walking.").

Accordingly, Plaintiff's request for review on this basis is denied.

### B. The RFC is Supported by Substantial Evidence

In Plaintiff's second claim, she argues the ALJ "failed to perform a function-by-function assessment of [Plaintiff's] exertional abilities which he was required to do." (Pl.'s Br., ECF No. 12, at 5 (citing SSR 96-8p)). Specifically, Plaintiff contends "[t]he ALJ never determined what amount of time [Plaintiff] could stand and walk." (*Id.*). The Commissioner responds the ALJ did not err under SSR 96-8p because he provided a proper explanation of the medical evidence

---

[5] Plaintiff seemingly contends the ALJ erred by failing to delineate between her abilities to balance, walk, and stand, and failing to specifically address how her use of a cane affected each of those abilities. (*See* Pl.'s Br., ECF No. 12, at 5 (discussing use for balance); Pl.'s Reply, ECF No. 14, at 2 (arguing "[s]tanding and walking are 2 independent exertion abilities.")). The ALJ did not err: there was no requirement for the ALJ to differentiate amongst those abilities because there was no evidence a cane was medically required for balancing, walking, or standing.

13

supporting the RFC, and that RFC is supported by substantial evidence. (Resp., ECF No. 13, at 6-8). I agree with the Commissioner. Plaintiff's request for review on this basis is denied.

The RFC is defined as the most a claimant can do despite the claimant's physical and mental limitations. 20 C.F.R. § 404.1545(a); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The ALJ must consider all relevant evidence in formulating the RFC, and the RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Fargnoli*, 247 F.3d at 41 (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). This does not require "the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the explanation must be sufficient "to permit meaningful review." *Id.*

In support of her argument that the ALJ failed to provide a function-by-function analysis of how many hours she could stand and walk, Plaintiff relies on SSR 96-8p, which provides in relevant part that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1. However, the Third Circuit has stated that "[t]his language does not command ALJs to make specific, written findings on dozens of individual work function categories." *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995, slip op. at 4 (3d Cir. Dec. 19, 2000). The court explained that "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Id.* Rather, the court reasoned the "Narrative Discussion Requirements" in the Ruling "describes more fully what an ALJ must articulate regarding a claimant's RFC"; specifically, that "[i]n his or her written opinion, the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities,

14

and explain the resolution of any inconsistencies in the record." *Id.* at 4-5 (citing SSR 96-8p, 1996 WL 374184, at *7).

In other words, the RFC determination must include an explanation of the substantial evidence upon which it relies. *See Burnett*, *supra; Fargnoli*, *supra*; *Jones*, *supra*. SSR 96-8p does not require the ALJ perform a "function-by-function" analysis of each and every work-related activity. *E.g.*, *Bencivengo*, No. 00-1995, slip op. at 4-5; *Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) (affirming RFC determination despite that the ALJ "did not make a task by task or function by function" analysis because supported by substantial evidence); *Glass v. Comm'r of Soc. Sec.*, No. 18-15279, 2019 WL 5617508, at *8-9 (D.N.J. Oct. 31, 2019) (denying claim that "ALJ failed to conduct a 'function-by-function' analysis" because "the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence."); *Tenorio v. Berryhill*, No. 16-3760, 2017 WL 4548057, at *4 (E.D. Pa. Oct. 11, 2017) (denying claim that ALJ failed to clearly state "standing and walking limitations" because a function-by-function analysis is not required.); *Carozza v. Comm'r of Soc. Sec.*, No. 15-4737, 2016 WL 3901010, at *10 (E.D. Pa. July 16, 2016) (collecting cases affirming RFC determinations when supported by substantial evidence but without a function-by-function analysis because "the Court of Appeals clarified that while a written function-by-function analysis in the ALJ's decision is desirable, it is not required.").

I find no error with the ALJ's RFC determination because it is supported by substantial evidence. Although the ALJ did not perform a "function-by-function" analysis, such analysis was not required. The ALJ provided a thorough narrative discussion of the medical evidence, explaining which evidence he relied upon for the RFC determination. (R. 14-18). The ALJ

explained that Plaintiff's diagnostic imaging, her operative reports, her conservative treatment "consisting primarily of injections, physical therapy, chiropractic care, medication as well as ice and topical creams," and treatment notes indicating improved symptomology supported an RFC of a limited range of light work. (R. 14-18). Moreover, and notable to Plaintiff's claim that "[t]he ALJ never determined what amount of time [Plaintiff] could stand and walk," the ALJ afforded great weight to the opinions of Drs. Mullin and Munkberg, who opined she retained the ability to stand and walk for at least six hours in an eight hour workday, which is consistent with the definition of light work as set forth in applicable regulations. (R. 18, 75-76, 596-97); *Titles II and XVI: Determining Capability to Do Other Work—The Medical Vocational Rules of Appendix 2*, 1983 WL 312521, at *6 (1983) (explaining that Regulations define "light work" as requiring "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour-workday.").

Accordingly, I conclude the ALJ did not err in formulating Plaintiff's RFC. The ALJ provided a thorough review of the medical evidence and gave a clear explanation of the bases for his determination that Plaintiff retained the RFC to perform a limited range of light work. *Jones*, 364 F.3d at 505; *Fargnoli*, 247 F.3d at 41. Substantial evidence supports the RFC determination. Plaintiff's request for review on this basis is denied.

### III. CONCLUSION

For the forgoing reasons, I find the ALJ did not err and conclude the RFC is supported by substantial evidence. The ALJ did not err by omitting Plaintiff's cane usage because there was no evidence the cane was medically required. The ALJ also did not err by failing to perform a function-by-function analysis because such analysis is not required, and because the ALJ

16

properly explained the medical evidence supporting the RFC determination. Substantial evidence supports the ALJ's conclusions. Accordingly, Plaintiff's request for review is denied.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge